**In re Arthur Eugene EVANS and Shirley Ann Evans, Debtors-in-possession.**

**Bankruptcy No. 686–07734–R11.**

United States Bankruptcy Court,
D. Oregon.

April 2, 1987.

Owen B. McCullen, Armstrong, McCullen & Philpott, P.C., Eugene, Or., for debtors.

Wilson C. Muhlheim, Hershner, Hunter, Moulton, Andrews & Neill, Eugene, Or., for U.S. Nat. Bank.

Jennifer Palmquist, Dunn, Carney, Allen, Higgins & Tongue, Portland, Or., for Federal Land Bank.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Consultant.

This matter comes before the court upon the motion of the debtors-in-possession (debtors) to convert their Chapter 11 case to a case under the newly enacted Chapter 12 provisions of the Bankruptcy Code. Two secured creditors, United States National Bank of Oregon (USNB) and The Federal Land Bank of Spokane (FLB) opposed the motion. The parties, through their respective counsel, have consented to proceeding, in this matter, before the bankruptcy consultant. Accordingly, this opinion is entered pursuant to the authority granted by Miscellaneous Order No. 87-21 of the United States District Court for the District of Oregon, 72 B.R. 20.

Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code on April 22, 1986. On September 29, 1986, this court ordered the debtors to file a Chapter 11 disclosure statement and plan by October 29, 1986. No Chapter 11 disclosure statement or plan was filed and on December 5, 1986, this court issued an order to the debtors to show cause why this case should not be dismissed for lack of prosecution. The debtors filed their motion to convert this case to a case under Chapter 12 of the Bankruptcy Code on December 23, 1986. Counsel presented oral argument on the motion on March 5, 1987.

Both USNB and FLB maintain that cases pending under the Bankruptcy Code before the effective date of the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99-554 (the Act) may not be converted to a case under Chapter 12 of the Bankruptcy Code. USNB and FLB rely upon section 302(c)(1) of Title 3—Transition and Administrative Provisions of Pub.L. No. 99-554.

Debtors contend that this court may look beyond the literal meaning of section 302(c)(1), give deference to the legislative history leading up to the enactment of Chapter 12 and, accordingly, allow conversion, if equitable.

Sections 256 and 257 of the Act amended sections 706(a), 1112(d) and 1307(d) to allow conversion from Chapters 7, 11 and 13 to Chapter 12. Under amended section 706(a), the debtor may have an absolute right to convert to Chapter 12 provided no prior conversions have taken place. Under amended section 1112(d), the debtor may convert "if equitable". Conversion under amended section 1307(d), is discretionary with the court.[1]

Section 302(c)(1) of the Act provides that:

---

1. Amended sections 706, 1112(d) and 1307(d) state as follows:

11 U.S.C. § 706. Conversion

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of

this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of

The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act."

This includes the amendments to sections 706(a), 1112(d) and 1307(d) that permit a party to convert to Chapter 12. The effective date of the Act is November 26, 1986, thus, on its face, section 302(c)(1) clearly prohibits the debtors from converting their Chapter 11 case to a case under Chapter 12.

This statute is apparently at odds with at least some of the legislative history as set forth in the Joint Explanatory Statement of the Committee of Conference which reads as follows:

"APPLICABILITY OF CHAPTER 12 TO PENDING CHAPTER 11 AND 13 CASES."

It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of the enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case in allowing conversions only where it is equitable to do so.

Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

H.R.Rep. No. 99-958, 99th Cong., 2nd Sess., at 48-49 (1986).

Already, this issue has been before a number of bankruptcy courts resulting in a split of authority. A minority of courts have allowed conversion to Chapter 12, notwithstanding the clear language of section 302(c)(1) based, primarily, upon the Conference Statement set forth above. *In re Big Dry Angus Ranch, Inc.*, 69 B.R. 695 (Bankr.D.Mont., 1987); *In re Erickson Partnership*, 68 B.R. 819 (Bankr.D.S.D., 1987); *In re Mason*, 70 B.R. 753 (Bankr.W. D.NY, 1987); *In re Henderson*, 69 B.R. 982 (Bankr.N.D.Ala., 1987); *In re Swenson*, 68 B.R. 819 (Bankr.D.S.D., 1987).

In *In re Henderson, supra.*, the court stated its position that it is inconceivable that Congress intended to discriminate against farmers who were forced into bankruptcy prior to the effective date of the Act. The drafters clearly anticipated conversions of pre-Act cases to Chapter 12. Likewise, in *In re Mason, supra.*, the court stated that a statute should not be applied strictly in accord with its literal meaning, where to do so would be contrary to its manifest purpose. The court in *In re Erickson Partnership, supra.*, concluded that Congress inadvertently placed sections 1112(d) and 1307(d) within subtitle B and that Congress had not intended these two sections to be governed by the provisions of section 302(c)(1). Curiously, the court was silent as to what affect this would have upon amended section 706(a). In *In re Big Dry Angus Ranch, Inc., supra.*, the

---

this title. Any waiver of the right to convert a case under this subsection is unenforceable.
11 U.S.C. § 1112(d)

The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—
(1) the debtor requests such conversion;
(2) the debtor has not been discharged under section 1141(d) of title; and
(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

11 U.S.C. § 1307(d)

Except as provided in subsection (e) of this section, at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 or 12 of this title.

court indicated that the entire Act should be looked upon as a whole in construing section 302(c)(1). That court further indicated that section 302(c)(1) could be interpreted to mean that the provisions of the Act could not be applied before the effective date (November 26, 1986) and/or the provisions of Chapter 12 could not be applied to Chapter 11 and Chapter 13 cases, such as in the area of adequate protection or the sale of property.

Thus, with the possible exception of the *Big Dry Angus Ranch, Inc.* case, the minority of courts have chosen to disregard the prohibition against conversion by concluding that Congress has made a mistake which the courts may rectify.

The majority of the courts that have considered this conversion issue have, however, applied the clear Congressional directive set forth in section 302(c)(1) and have denied conversion of cases pending on or before the effective date of the Act to Chapter 12. *In re Tomlin Farms, Inc. et al*, 68 B.R. 41 (Bankr.D.N.D., 1986); *In re Ray*, 70 B.R. 431 (Bankr.E.D.Mo., 1987); *In re Spears*, 69 B.R. 511 (Bankr.S.D.Iowa, 1987); *In re Groth*, 69 B.R. 90 (Bankr.D. Minn., 1987); *In re Albertson*, 68 B.R. 1017 (Bankr.W.D.Mo., 1987); *In re B.A.V., Inc.*, 68 B.R. 411 (Bankr.D.Colo., 1986); *In re Glazier*, 69 B.R. 666 (Bankr.W.D.Okl., 1987); *In re Lindsey*, 69 B.R. 632 (Bankr. C.D.Ill., 1987); *In re Barclay*, 69 B.R. 552 (Bankr.C.D.Ill., 1987); *In re Hughes*, 70 B.R. 66 (Bankr.W.D.Va., 1987); *In re Council*, 70 B.R. 20 (Bankr.W.D.Tenn., 1987); *In re Petty*, 69 B.R. 412 (Bankr.N.D. Ala., 1987). These courts point out that: "Any uncertainty or ambiguity in the meaning of section 302(c)(1) is created not by the statute itself but by language found in the Joint Explanatory Statement of the Committee of Conference." *In re Tomlin Farms, Inc. et al., supra.* "There is also a principle of statutory interpretation that courts do not look to legislative history if the statutory language is clear and unambiguous." *In re Barclay, supra.; United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1975). "Legislative history

may not be used to create the ambiguity." *In re Tomlin Farms, Inc., supra,* citing *United States v. Public Utility Commission*, 345 U.S. 295, 73 S.Ct. 706, 98 L.Ed. 1020 (1953). "The final intent of Congress appears on the face of the legislation which it passes, notwithstanding contrary provisions and committee reports which are designed to serve as aids to members of Congress considering particular drafts of bills for enactment." *In re Groth, supra.* The Supreme Court has recently stated in *U.S. v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d64 (1985):

> "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted ..." Nor is the judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever the court believes those words lead to a harsh result. ... On the contrary, deference to the supremacy of the legislature, as well as recognition that Congressmen typically vote on the language of the bill, generally require us to assume that "the legislative purpose is expressed by the ordinary meaning of the words used. ..." 105 S.Ct. at 1793 (citations omitted)

██ Further, two other rules of statutory construction are important. The first is that a later section of a statute controls over an earlier. Here, section 302(c) of the Act which prohibits conversion comes later than sections 256 and 257 which permit it. *In re Barclay, supra.*

██ The second rule is that a specific action of Congress controls over a general action. Here, section 302(c) is specifically directed to the question of conversion and clearly prohibits it, while sections 256 and 257 can be considered more as general amendments to sections 706, 1112 and 1307. *Id.*

██ Finally, prohibiting conversion would not, as the debtors and some courts suggest, lead to an absurd result. This court finds section 302(c)'s prohibition against conversion consistent with past Congressional practice, especially in bank-

ruptcy legislation. For example, the Bankruptcy Reform Act of 1978 (the Bankruptcy Code) when enacted, also proscribed conversion of cases pending under the old Bankruptcy Act of 1898 to chapters under the new Code. Section 403(a) [2].

Accordingly, this court concludes that the majority view is the better reasoned approach. "The sole function of section 302(c)(1) is to prevent the application of the Chapter 12 provisions to cases pending at the time of its effective date. To give effect to the Conference report, and to avoid the clear mandate of section 302(c)(1) would be to re-write the Act, ..." *In re Hughes, supra.*

This court is mindful of the harsh results that may follow as a result of this opinion. Like the other courts that follow the majority position, however, this court feels it is without power to do what the debtors advocate, namely, to utilize portions of legislative history in such a way as to totally disregard the clear mandate of section 302(c)(1). Accordingly, the debtors' motion to convert should be denied.

This opinion shall constitute findings of fact and conclusions of law under Federal Rule of Civil Procedure 52 as made applicable to this court by Bankruptcy Rule 7052, they shall not be separately stated.

---

**2.** Section 403(a) states as follows:

"A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if [the New Code] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the [New Code] had not been enacted." 92 Stat. 2683, note preceeding 11 U.S.C. § 101 (1976 ed., Supp.IV).